### JOHN B. ORR, Inc., v. FIRST TRUST & SAVINGS BANK et al.

### FIRST TRUST & SAVINGS BANK v. TAYLOR.

#### Nos. 6953, 7004.

Circuit Court of Appeals, Fifth Circuit.

March 21, 1934.

Herbert U. Feibelman, of Miami, Fla., for appellant John B. Orr, Inc.

James A. Dixon, of Miami, Fla., for appellant First Trust & Savings Bank.

Wm. J. Dunn, of Miami, Fla., for appellee Taylor.

James A. Dixon, Thomas H. Anderson, Russell M. Yates, Scott M. Loftin, Jno. P. Stokes, James E. Calkins, and William J. Dunn, all of Miami, Fla., for appellees First Trust & Savings Bank and others.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

These two cases involve claims against the Indian Creek Holding Company, bankrupt, and may be conveniently dealt with in one opinion.

The Indian Creek Golf Club owned certain land in Dade county, Fla. Part of the land was set aside for a golf course and other club purposes. Taylor, appellee in No. 7004, was employed in his capacity as architect to draw plans and specifications and superintend the erection of a clubhouse. He was to be paid a commission of 5 per cent. on the total cost for his services. The contract for the building was awarded to John B. Orr, Inc., appellant in No. 6953. The contract for the building was entered into on August 1, 1930, work began shortly thereafter and proceeded until the building was completed. The contract price was $330,755, and from time to time extras were added. On December 16, 1930, after the work had been started, the golf club executed a deed of trust and a mortgage, in the amount of $750,000, covering the property, with the First Trust & Savings Bank as trustee. On March 12, 1931, the entire property was conveyed by the golf club to the Indian Creek Holding Company. That company was adjudicated bankrupt on its voluntary petition, and D. Richard Mead was appointed its trustee. John B. Orr, Inc., and Taylor filed separate petitions in the bankruptcy proceedings claiming mechanics' and materialmen's liens on the property under the laws of Florida (Compiled Gen. Laws 1927, § 5349 et seq.) for balances due them, respectively $20,000.00 and $3,700.52, and praying that the liens be recognized as superior to the mortgage, and that the property be sold to satisfy them. The bank, as trustee under the mortgage, opposed the allowance of these liens. After a hearing before the referee he reported in favor of both liens. On a review by the District Judge the ruling of the referee was reversed as to John B. Orr, Inc., and affirmed as to Taylor.

With regard to the claim of John B. Orr, Inc., it appears that it made a settlement with the owner, as the result of which it was given a note for $20,000. It is not disputed that the Orr Company would have a lien on the land and building for the amount of this note, superior to the mortgage, if it represented payment for part of the contract price, including extras, but it is contended that it was given purely as liquidated damages for loss occasioned by various delays, caused by the action of the owner. The record is voluminous, and it would serve no good purpose to review the evidence in detail. It is sufficient to say that a clear preponderance of the evidence supports the conclusion of the referee that the note was given to reimburse the contractor for excessive cost to him of doing the work, allowed as compensation, additional to the contract price, and not for damages for breach of contract.

With regard to the claim of Taylor, the contention of the bank is that, while Taylor might have a lien for superintendence of the building, he was not entitled to a lien for the making of plans and specifications; that he has failed to divide his claim to show how much would be attributable to superintendence, and therefore cannot recover anything as a privileged creditor. In the case of Palm Beach Bank & Trust Co. v. Lainhart, 84 Fla. 662, 95 So. 122, the Supreme Court of Florida held that an architect who had furnished plans and specifications and was employed as superintendent of construction of a building was entitled to a lien upon the property for his services as superintendent, superior to subsequent mortgages. The opinion is somewhat ambiguous, and it might be inferred that the ruling excluded a lien for the making of plans and specifications. The referee construed the decision to mean that the Supreme Court had divided architects into two classes; those who merely make plans and specifications and are not entitled to a lien, and those who, in addition to making plans and specifications, acted as superintendents of construction and have a lien under the

Florida Statutes. That interpretation is not unreasonable, in view of the full discussion of the subject in a note to the case of Breeding v. Melson, 4 W. W. Harr. (Del.) 9, 143 A. 23, 60 A. L. R. 1252, but it is unnecessary to decide that point. Under the contract which Taylor had with the golf club, he was to be paid 5 per cent. of the cost of the work for his entire services. It is shown that in addition to drawing plans and specifications he spent a great deal of time in superintending the doing of the work. He undoubtedly had a superior lien for superintendence. From time to time. he was paid an aggregate of $16,356.72, and is claiming a balance of $3,700.52. As compared to his services in superintending the work, the value of the plans and specifications may be considered negligible. As the plans were completed before the work started, if compensation for his services is to be divided, the first payments he received should be attributed to compensation for the plans, and there could be no doubt that the balance he now claims should be considered as due entirely for his services in superintending the work.

The judgment in No. 7004 is affirmed. The judgment in No. 6953 is reversed, and the cause is remanded for further proceeding not inconsistent with this opinion.